UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS E. MCCLENDON, | No. 2:21-cv-2088 AC P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| SECRETARY OF CDCR, et al., | |
| Defendants. | |

Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983 and has requested authority pursuant to 28 U.S.C. § 1915 to proceed in forma pauperis. ECF Nos. 1, 5. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. Also before this court is plaintiff's request for a preliminary injunction related to his claim involving indecent exposure identifiers, and that a scheduling order issue allowing him to identify defendants. See generally ECF No. 1 at 1, 19.

For the reasons stated below, plaintiff's application to proceed in forma pauperis will be granted, and plaintiff will be directed to file a first amended complaint. In addition, plaintiff's request that a scheduling order issue will be denied. It will also be recommended that plaintiff's request for injunctive relief be denied.

////

////

I. APPLICATION TO PROCEED IN FORMA PAUPERIS

Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). ECF No. 5. Accordingly, the request to proceed in forma pauperis will be granted.

Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of Court. Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

II. SCREENING REQUIREMENT

A claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (brackets added); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). "[A] judge may dismiss . . . claims which are 'based on indisputably meritless legal theories' or whose 'factual contentions are clearly baseless.'" Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989) (brackets added) (quoting Neitzke, 490 U.S. at 327), superseded by statute on other grounds as stated in Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. Franklin, 745 F.2d at 1227-28 (citations omitted).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Failure to state a claim under § 1915A incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." Wilhelm v. Rotman,

2

680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted).  In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citations omitted).  "'[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'" Id. (alteration in original) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (brackets added) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).  In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, see, e.g., Hosp. Bldg. Co. v. Trs. of the Rex Hosp., 425 U.S. 738, 740 (1976) (citation omitted), as well as construe the pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor, see Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) (citations omitted).

### III.   THE COMPLAINT

Plaintiff names the Secretary of the California Department of Corrections and Rehabilitation ("CDCR") as well as five employees at California Medical Facility ("CMF") and five employees at California Health Care Facility ("CHCF") as defendants in this action.[1]  ECF No. 1 at 1-2.  He contends that defendants violated his Eighth Amendment rights when, after plaintiff was written up and found guilty of exhibitionism, defendants: (1) forced him to be identified as an IEX (indecent exposure) inmate in the general population[2] and did not protect him, which led to him being attacked, and (2) failed to provide him with the mental health

---

[1] Plaintiff also names nine unidentified correctional officers at CMF and nine unidentified correctional officers at CHCF as defendants.  ECF No. 1 at 2.

[2] Plaintiff states he was required to wear an IEX jumpsuit every time he left his cell.  ECF No. 1 at 6.  He also states that an IEX sign was put on his cell door, and a yellow placard covering his cell window was posted for everyone to see.  Id.

1  treatment that he needed to address his exhibitionism, suicidal behavior, and depression.  Id. at 4-
2  16.
3        Plaintiff claims that defendants' actions and/or inaction led to the attack, which left him
4  with a black eye and a bloody nose.  ECF No. 1 at 4.  He states that he is constantly threatened by
5  other inmates who have "zero tolerance" for IEX classified inmates.[3]  Id. at 14.  Plaintiff also
6  alleges that the IEX identification and placement in the general population have led to him being
7  fearful of leaving his cell, of showering, and of attending individual therapy.  Id. at 11, 16.
8  Finally, plaintiff claims that defendants forcing him to be identified as an IEX inmate has
9  interfered with his ability to get treatment for his mental health problems, which in turn, has
10 increased his depression, his urges to self-harm, and his suicidal ideation.  Id. at 14, 16.
11       Plaintiff asks the court to issue a preliminary injunction that requires the CDCR to repeal
12 its IEX policy.  ECF No. 1 at 19.  He also asks the court to "issue a scheduling order to permit
13 [him] to identify and name unidentified defendants."  Id. (brackets added).
14     IV.   DISCUSSION
15        A.  General Deficiencies in Complaint
16       As a threshold matter, plaintiff's complaint fails to state a claim upon which relief can be
17 granted.  This is because neither of the two claims identifies with sufficient specificity which
18 defendants took which specific actions that plaintiff alleges violated his constitutional rights.[4]
19 See generally ECF No. 1 at 4-16.  This fact alone is sufficient to require plaintiff to amend the
20 complaint.
21 ////

---

[3] Plaintiff states that one of the grievances he filed ended in a determination that some of the CMF staff's actions were "not consistent" with the prison's operations manual and that "staff [had] violated policy."  ECF No. 1 at 8.  Aside from the fact that the misapplication of prison regulations does not typically rise to the level of a violation of constitutional right (see Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009)), plaintiff has failed to identify the prison employees who allegedly failed to protect him.

[4] Plaintiff does state that defendant E. Pedersen at CHCF failed to grant him relief on a related grievance because plaintiff, "[had] received 22 RVR[]s for IEX with prior convictions."  ECF No. 1 at 11 (brackets added).  However, as discussed herein, defendant Pedersen's denial of plaintiff's grievance regarding his IEX classification fails to state a claim.

4

In addition, the court notes that at the time plaintiff filed the instant complaint, he was not housed at CMF, nor is he currently housed there. CHCF is where he is currently being held. See ECF No. 1 at 1. Therefore, to the extent that the complaint also requests that CMF defendants be enjoined from identifying plaintiff as an IEX prisoner and not to place him in the general population (see id. at 7-10), the motion for injunctive relief must be denied. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974); Civil Beat Law Center for the Public Interest, Inc. v. Centers for Disease Control & Prevention, 929 F.3d 1079, 1086 (9th Cir. 2019) (citing Littleton). Despite these deficiencies, the court will address the other, potentially curable, deficiencies in each of plaintiff's claims so that they can be avoided on amendment.

    B. Claim One: Indecent Exposure Classification; Failure to Protect and/or Threat to Safety

      1. Plaintiff's Allegations

In Claim One, plaintiff alleges that defendants classifying him as an IEX inmate and requiring that he be identified as such within the general prison population led to him being attacked and injured in violation of his Eighth Amendment right to safety. ECF No. 1 at 4, 12-13. He further alleges that inmates diagnosed with exhibitionism are "predisposed to physical and sexual assault," and that "to punish them . . . with discipline under '[prison rules and regulations]' while in a general population setting" violates their Eighth and Fourteenth Amendment rights. Id. at 5 (brackets added). The IEX classification and general population placement, plaintiff argues, "posed an imminent risk to his overall welfare" because in prison, the worst label to have is that of "sex offender." Id. at 7. As a result, plaintiff alleges, no matter where he goes, he is told he will be stabbed because he is a "sexual predator." Id.

Plaintiff also states that despite CMF's Chief Deputy Warden D. Hurtado having determined that "staff actions were not consistent with the guidelines set forth in [the CDCR's Department Operations Manual] [S]ection 52100.3," and that "staff violated policy" (ECF No. 1 at 8) (brackets added), CDCR staff members at both CMF and CHCF continued to make plaintiff

wear the IEX jumpsuit and left the IEX identifiers on his cell window and door (id. at 8-13). They also "looked the other way when he was threatened" by other inmates. Id. at 8-9. As a result, plaintiff requests that defendants be enjoined from continuing these practices. Id. at 19.

### 2. Discussion

#### a. Indecent Exposure Classification; Violation of Prison Regulations

Prisoners have no constitutional right to a particular classification status. Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987) (citations omitted). Nor do they have a right to be housed in a particular part of a prison. See Grayson v. Rison, 945 F.2d 1064, 1067 (9th Cir. 1991). Furthermore, inmates have no Eighth Amendment right to be housed in a manner that avoids confrontation. Atiyeh v. Capps, 449 U.S. 1312, 1315-16 (1981).

In addition, a prison official's failure to follow a prison's own rules or policies does not, per se, violate the constitution. Cousins v. Lockyer, 568 F.3d 1063, 1070-71 (9th Cir. 2009). Finally, identifying a prisoner as a sex offender,[5] without more, does not violate the Eighth Amendment's prohibition against cruel and unusual punishment. See Neal v. Shimoda, 131 F.3d 818, 833 (9th Cir. 1997) (finding labeling prisoner as sex offender and requiring participation in related offender programming did not violate contemporary standards of decency).

For these reasons, plaintiff's allegations that his constitutional rights were violated when defendant prison officials classified him as a sex offender, failed to follow prison rules and regulations, and failed to correct their practices in accordance with CMF Chief Deputy Warden D. Hurtado's grievance findings,[6] fail to state claims upon which relief may be granted. Although the likelihood of plaintiff being able to make these claims viable upon amendment appears low, he will be given the opportunity to do so.

---

[5] Plaintiff points out that his exhibitionism is a mental health condition that requires treatment and that when issued a rules violation report in 2020 for indecent exposure, he was "presumed guilty" of it at the related disciplinary hearing. See ECF No. 1 at 5-7. However, plaintiff does not allege that he was deprived of due process during the proceedings that led to the determination that he should be classified as a sex offender. See generally ECF No. 1.

[6] Plaintiff alleges that Chief Deputy Warden Hurtado's review of plaintiff's grievance led to a finding that the actions of some CMF prison staff "were not consistent with" guidelines set forth in DOM Section 52100.3. ECF No. 1 at 8. Plaintiff does not, however, clearly identify which part of Section 52100.3 defendants were determined to have violated. See id. at 8-10.

b. Failure to Protect and/or Threat to Safety

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." DeShaney v. Winnebago County Dep't of Social Services, 489 U.S. 189, 199-200 (1989). "[An] affirmative duty to protect arises . . . from the limitation which [the State] has imposed on his freedom to act on his own behalf." Id. at 200 (brackets added).

The duty to protect a prisoner from serious harm requires that prison officials take reasonable measures to guarantee the safety and well-being of the prisoner. See Farmer v. Brennan, 511 U.S. 825, 832-33; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). Specifically, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Farmer, 511 U.S. at 833.

To state a cognizable Eighth Amendment claim on a failure to protect theory, a prisoner must reasonably allege that a correctional official knew of but disregarded an excessive risk to his health or safety. Farmer, 511 U.S. at 837. There must be evidence which shows that a defendant acted with a "sufficiently culpable state of mind." Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842 (citations omitted).

In general, allegations of verbal harassment do not state a viable Eighth Amendment claim. Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996). A claim based on verbal harassment can succeed only if the offending comments were "gross even for a prison setting and were calculated to and did cause [plaintiff] psychological damage." Keenan, 83 F.3d at 1092.

Plaintiff has not provided enough information to support his failure to protect claim. With respect to the specific incident in which he states he was attacked and left with a black eye and a bloody nose (ECF No. 1 at 4), plaintiff will need to identify the defendants who were made aware that he had been threatened because of his IEX status and/or that he was in danger, yet failed to act to prevent him from being attacked. He must also indicate why he believes those defendants

7

were aware that he had been threatened. Finally, to the extent plaintiff argues that certain defendants failed to protect him from verbal threats and/or abusive and threatening rants of other inmates (see id. at 8, 13), he must provide more detail about the verbal harassment and any resulting psychological harm he experienced due to specific defendants' failure to protect him. He will be given the opportunity to provide this information in an amended complaint.

### C. Claim Two: Deliberate Indifference to Serious Medical Need

#### 1. Plaintiff's Allegations

In Claim Two, plaintiff alleges that defendants at both CMF and CHCF were deliberately indifferent to his serious mental health needs in violation of his Eighth Amendment rights when they interfered with his ability to access and receive mental health treatment in a "[therapeutic] [] and hospitable environment." ECF No. 1 at 10, 13-14 (brackets added). Specifically, he contends that because of the IEX identification in the general population, he has "had to refuse" multiple medical and therapy appointments as well as exercise, canteen, and visitation opportunities due to his IEX classification and the related discipline imposed upon him while placed in the general population. Id. at 8. He also points out that the IEX identification requirement continued to be imposed upon him at CHCF despite having been transferred there after multiple suicide attempts. Id. at 10.

Plaintiff alleges that defendants knew or should have known that "allowing, and or causing [him] to isolate in his cell because of being forced to wear an IEX jumpsuit each time he exited his cell would contribute to his decompensation[] and cause him to engage in self injurious behavior." ECF No. 1 at 14. He further asserts that defendants knew or should have known that his mental health diagnosis of exhibitionism required them to place him in a program that could provide him with the appropriate treatment to which he was entitled under the Eighth Amendment. Id. at 14-15.

#### 2. Discussion

"[T]he government has an obligation to provide medical care for those whom it punishes by incarceration." Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). To state a viable claim of deliberate indifference to serious

medical need, a plaintiff must show that (1) a serious medical need exists, and (2) defendant's response was deliberately indifferent. Serious medical need can be shown by demonstrating that a failure to treat a prisoner could result in significant injury or worsening pain. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). A deliberately indifferent response can be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need coupled with harm caused by that indifference. Id. "A heightened suicide risk or an attempted suicide is a serious medical need." Conn v. City of Reno, 591 F.3d 1081, 1095 (9th Cir. 2010), vacated, 563 U.S. 915 (2011), opinion reinstated in relevant part, 658 F.3d 897 (9th Cir. 2011).

Regardless of why plaintiff began decompensating and engaging in self-harming behavior, if defendants were aware that plaintiff's mental health condition was deteriorating and threatening his safety, and did nothing to assist him with getting necessary treatment, plaintiff may be able to state a deliberate indifference claim. If plaintiff wishes to proceed with this claim, he must clearly identify in an amended complaint the individuals at each institution who were aware of his declining mental state and the risks it posed, yet did nothing to assist him with getting the help he needed. Specifics regarding why plaintiff believes certain defendants were aware that he was decompensating should also be provided.

### V. PRELIMINARY INJUNCTION AND SCHEDULING ORDER REQUESTS

Within the complaint, plaintiff has also requested that the court issue a preliminary injunction that stops defendants from forcing him to wear an IEX jumpsuit in general population, have an IEX sign on his cell door, and have related yellow placards covering his cell window. ECF No. 1 at 1, 19. He also asks the court to issue a scheduling order, presumably to give him more time to identify defendants in this case. Id. at 19. These requests must be denied.

#### A. Request for Preliminary Injunction

When evaluating the merits of a motion for preliminary injunctive relief, the court considers whether the movant has shown that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, 555 U.S. 7, 20 (2008); Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th

Cir. 2009) (quoting Winter). A preliminary injunction is appropriate when a plaintiff demonstrates . . . "serious questions going to the merits and a hardship balance [] tips sharply toward the plaintiff, . . . assuming the other two elements of the Winter test are also met." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-32 (9th Cir. 2011). An injunction against individuals who are not parties to the action is strongly disfavored. See Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 110 (1969) (noting constitutional rule that court has no power to adjudicate personal claim unless it has jurisdiction over person of defendant).

Considering the Winter factors, plaintiff's motion for a preliminary injunction must be denied. For the reasons explained above, the complaint before the court fails to state any viable cause of action. Consequently, at this stage in the proceedings, it cannot be said that plaintiff is likely to succeed on the merits of his complaint. This is enough to deny plaintiff's request for injunctive relief. See Winter, 555 U.S. at 20 (2008); Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-32 (9th Cir. 2011).

In any event, prison officials are given significant latitude regarding how they implement safety and security protocols in their institutions. Bell v. Wolfish, 441 U.S. 520, 547 (1979) ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."); Norwood v. Vance, 591 F.3d 1062, 1066 (9th Cir. 2010) (quoting Bell). Nothing in the complaint before the court suggests that the use of IEX identifiers lies outside the bounds of the State's authority or lacks legitimate penological purpose. See Neal, 131 F.3d at 833.

Finally, for the reasons discussed in screening the complaint, no proper defendant has been identified and it is unclear that plaintiff will be able to state a cognizable claim for relief. Accordingly, there is no basis for the court to exercise jurisdiction over any state official who may be in a position to grant the requested injunctive relief.

For all these reasons, the undersigned will recommend that plaintiff's request for a preliminary injunction be denied.

B. Request for a Scheduling Order

Plaintiff requests a scheduling order which will "permit [him] to identify and name unidentified defendants." ECF No. 1 at 19. This request must be denied because plaintiff has yet to file a complaint that can be served. Consequently, the motion is premature. Should an amended complaint be filed that is found to state a claim and is served on defendants, a scheduling order will issue in due course. There will be no need for a motion or request.

VI. LEAVE TO AMEND

Because plaintiff may be able to allege facts and/or provide information to remedy the deficiencies of his claims, he will be given the opportunity to amend his complaint. The complaint must identify each defendant by name and with specificity, as well as allege in specific terms how each one is involved. Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. See Arnold, 637 F.2d at 1355; Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient." Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d at 268 (citations omitted) (brackets added).

At the same time, however, the federal rules contemplate brevity. Specifically, the amended complaint should contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim.").

Plaintiff is also informed that the court cannot refer to a prior pleading in order to make his amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supersedes the original complaint. Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) (citations omitted), overruled in part by Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (claims dismissed with prejudice and without leave to amend do not have to be re-pled in subsequent amended complaint to preserve appeal). Once plaintiff files a first amended

complaint, the previous complaints no longer serve any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

### VII. PLAIN LANGUAGE SUMMARY OF THIS ORDER FOR A PRO SE LITIGANT

The complaint does not state any claim for relief and will not be served. You are being given the opportunity to file an amended complaint that clearly explains what each defendant did that violated your rights.

To state a claim that defendants were deliberately indifferent to your safety, you must identify the individuals who knew you were being threatened with specific harm from other inmates, explain how they knew you were in danger, and provide facts showing that they failed to take action to keep you safe. It is not enough to say that your IEX identifiers put you at risk in general.

To state a claim for deliberate indifference to your serious medical or psychiatric needs, you must identify the particular individuals who were aware of the fact that your mental health was deteriorating and you were at risk of harm, yet failed to get you the medical and/or mental health help that you needed. The facts that you allege must show that each defendant named on this claim acted with a wrongful state of mind.

Because your original complaint does not include facts that state any claim for relief, the magistrate judge is recommending that your request for a preliminary injunction be denied. The district judge will make the final decision about that.

Finally, your request for a scheduling order is denied because a schedule cannot be issued until there is a complaint that has been screened and served. If that happens after you amend, a scheduling order will be issued at the appropriate time without the need for you to make a request.

### CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. The Clerk of Court shall:
    a. Randomly assign a District Judge to this action, and

        b. Send plaintiff a copy of this court's Civil Rights Complaint By A Prisoner form.

2. Plaintiff's request for leave to proceed in forma pauperis (ECF No. 5) is GRANTED.

3. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

4. Within thirty days from the date of this order, plaintiff shall file a first amended complaint.

5. Plaintiff's request that a scheduling order issue (ECF No. 1 at 19) is DENIED as premature.

IT IS FURTHER RECOMMENDED that plaintiff's motion for a preliminary injunction (ECF No. 1 at 1, 19) be DENIED.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may result in a waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: September 26, 2022

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE